## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ANSUR AMERICA INSURANCE COMPANY,** a Michigan Corporation, | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 3:21-CV-59-SMY-MAB**[1] |
| **vs.** | ) ) | |
| **JAMES A. BORLAND and QUINN, JOHNSTON, HENDERSON & PRETORIOUS, CHTD.,** an Illinois corporation, | ) ) ) ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

This matter is before the Court as the result of another discovery dispute between Plaintiff Ansur America Insurance Company ("Ansur") and Defendants James Borland and Quinn, Johnston, Henderson, & Pretorious, Chtd (collectively, "Defendants"). Specifically, Defendants filed a motion to compel the production of documents responsive to two discovery requests that Ansur has withheld (*see* Doc. 160). For the reasons set forth below, Defendants' motion to compel is DENIED (Doc. 160).

### <u>BACKGROUND</u>

Ansur hired Defendants to defend its insured, Clawfoot Supply, LLC d/b/a Signature Hardware ("Signature"), in a product liability action brought against Signature by two of its retail customers, Helen and Wayne Miles (hereafter, the "Miles litigation")

---

[1] This matter was referred to the undersigned for resolution of Defendants' motion to compel (Doc. 161).

(Doc 1, p. 1; Doc. 95, p. 1; Doc. 125, p. 2). Defendants led Ansur to believe they could either obtain a defense verdict or a favorable settlement in the Miles litigation (Doc. 1, p. 2). However, Ansur alleges Defendants failed to defend the case in a reasonable manner, which forced Ansur to settle for the policy limit, a substantially higher figure (Doc. 1, p. 2; Doc. 95, p. 1). As a result, Ansur initiated this action against Defendants, alleging malpractice in connection with the Miles litigation (*see generally* Doc. 1). In response, Defendants argue Ansur contributed to its own injury (Doc. 19, pp. 42-43).

The parties engaged in extensive written and oral discovery throughout the course of this action (*see generally* Docs. 95, 125). Defendants previously filed a motion to compel after Ansur withheld a significant number of documents due to claims of attorney-client privilege and work product privilege (Doc. 95). After extensive briefing, that motion to compel was granted in part and denied in part (*see* Docs. 137, 152). Thereafter, the instant discovery dispute materialized when Defendants sought for Ansur to supplement its discovery responses to production requests 10 and 15 and Ansur refused (*see* Docs. 160, 160-3). Defendants' requests and Ansur's responses are as follows:

> Defendants' Production Request 10: All documents related in any way to the experts retained in this action.
> Ansur's Response: Plaintiff objects to this Request on the ground that it is premature and Plaintiff's investigation in ongoing, and that it is vague, overly broad and unduly burdensome.
> …
> Defendants' Production Request 15: Any documents or physical evidence that you intend to introduce into evidence or to use at the trial of this case.
> Ansur's Response: Plaintiff objects to this Request on the ground that it is premature and Plaintiff's investigation in ongoing. Subject to and without waiving its objections, Plaintiff will produce non-privileged documents responsive to this Request that are within its possession, custody or control at a mutually agreed upon time and place.

(Doc. 160-2, pp. 3-6).

The parties subsequently discussed these discovery requests and communicated their disagreement through email in January 2024 (Doc. 160-3). The parties also met and conferred regarding these requests during that time period (*see* Doc. 160 at p. 2). Thereafter, Ansur sent Defendants an email stating Ansur did not believe it was required to produce any additional documents and alerting Defendants that Ansur was "reserv[ing] the right to use (1) any source cited in Defendants' experts' reports, (2) any material published by Defendants' experts listed in their disclosure/CVs, and (3) filings and deposition testimony from any case in which Defendants' experts have testified." (Doc. 160-3 at p. 1). Consequently, Defendants filed the instant motion to compel the production of documents responsive to production requests 10 and 15 (Doc. 160). After the Court filed an Order to Show Cause (Doc. 180), Ansur responded to both the show cause order and Defendants' motion to compel (Doc. 182).[2]

<u>DISCUSSION</u>

Ansur argues it should not be compelled to produce documents responsive to production requests 10 and 15 because the requested materials are only going to be used for impeachment purposes and are already available to Defendants (Doc. 182 at p. 2). Conversely, Defendants argue Ansur's reasoning does not justify withholding responsive documents because "[a]n intended impeachment use does not protect the information

---

[2] The Court is satisfied with Ansur's explanation as to why it did not timely respond to Defendants' motion to compel. Accordingly, the Order to Show Cause is DISCHARGED and Ansur's response to Defendants' motion is hereby filed instanter (Doc. 182).

from normal discovery procedures." (Doc. 160 at p. 3). In response, Ansur contends it should not be required to produce responsive materials because Defendants' request is unduly burdensome and is not supported by any controlling authority mandating disclosure under these particular circumstances (Doc. 182 at p. 2).

Before analyzing the applicable statutes and caselaw, the Court believes it is helpful to identify what documents or types of documents are at issue in production requests 10 and 15. As stated in Defendants' motion to compel, Defendants seek supplemental documents and information that Ansur possesses "regarding Defendants' experts' prior work or publications." (Doc. 160 at p. 3). In other words, this dispute centers on whether Ansur is required to produce (or at least fully disclose) to the Defendants materials related to Defendants' *own* experts that Ansur may use at trial for impeachment purposes.

The parties dispute whether Federal Rule of Civil Procedure 26 requires disclosure or production in response to Defendants' production requests 10 and 15. Rule 26(a)(3) deals with initial disclosures and provides a list of information that must be disclosed to other parties, unless such disclosures are "solely for impeachment." In interpreting this exemption, numerous courts have held that Rule 26(a)(3) does not require a party to disclose evidence that it intends to use solely for impeachment purposes. *See, e.g.*, *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005) ("In accordance with Fed.R.Civ.P. 26(a)(1)(A) & (3), evidence offered 'solely for impeachment purposes' does not have to be disclosed prior to trial."); *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004) ("Rule 26(a)(3) exempts evidence used solely for

impeachment because pretrial disclosure would significantly diminish its impeachment value."); *Denty v. CSX Transp., Inc.*, 168 F.R.D. 549, 550 (E.D.N.C. 1996) ("Federal Rule of Civil Procedure 26(a)(3) clearly excludes from pretrial discovery material which will be used 'solely for impeachment purposes.'"). Accordingly, Ansur was not required to disclose or produce the requested materials to comply with Rule 26(a)'s mandatory, initial disclosure requirements.

Therefore, as both parties recognize, the key question is whether Ansur may nevertheless be required to produce these materials pursuant to Rule 26(b) because it was part of a formal discovery request made by Defendants. Pertinently, Rule 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Furthermore, Rule 26(b)(2)(C) states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> 
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Several courts, albeit none binding upon this Court, have held that Rule 26(b) may impose a duty to produce or disclose requested information, even if that evidence is only going to be used for impeachment purposes. *See, e.g.*, *Elion v. Jackson*, 544 F. Supp. 2d 1, 7 (D.D.C. 2008) ("Rule 26(b) thus imposed a duty on defendant to disclose Ms. Higgins' identity in response to plaintiff's Interrogatory Number 1(c), even if her testimony was intended to be used solely for impeachment."); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 436-37 (D. Md. 2006) ("A party must disclose impeachment evidence in response to a specific discovery request. … No special status is given to impeachment evidence under Rule 26(b)(1)."); *Marsh v. Cnty. of San Diego*, No. 05CV1568 JLS (AJB), 2008 WL 11411442, at *4 (S.D. Cal. Sept. 4, 2008); *Deese v. Springfield Thoracic & Cardiovascular Surgeons*, 183 F.R.D. 534, 537 (C.D. Ill. 1998) (imposing sanction for discovery violation based upon the failure to disclose certain impeachment evidence). For example, in *Deese*, the plaintiff's attorney did not disclose the existence of an audio tape and transcript to the opposing party until it was used for impeachment purposes at trial. 183 F.R.D. at 535-36. That audio tape contained a conversation between the plaintiff and another doctor that was recorded by the plaintiff pursuant to his attorney's instructions, without the other doctor's knowledge or consent. *Id.* Crucially, in deciding to sanction the plaintiff's attorney for not disclosing the existence of the tape, the court rejected the attorney's claim that he only intended to use the tape for impeachment purposes and instead found that he developed that argument after the fact to protect himself from sanctions. *Id.* at 538.

Likewise, in *Newsome*, the court examined whether "evidence withheld as *solely for impeachment* evidence must be produced: (1) whenever the evidence also has a

substantive purpose; and (2) if it would be responsive to a specific discovery request."
437 F. Supp. 2d at 434 (emphasis in original). There, the defendant did not disclose or
produce certain audio tapes to the plaintiff even though they were responsive to the
plaintiff's discovery requests. *Id.* When, on the first day of trial, the defendant indicated
an intent to use the tapes for impeachment purposes, the plaintiff sought to compel the
defendant to produce the tapes. *Id.* Ultimately, the court held the tapes must be produced
because they were being used for both substantive and impeachment purposes, and were
responsive to the plaintiff's specific discovery requests. *Id.* at 438.

Crucially, although *Deese* and *Newsome* provide some support for the notion that
impeachment evidence may be required to be produced or disclosed in response to a
specific discovery request, there is a clear and significant distinction between this dispute
and those cases. Namely, Defendants' requests in this case seek materials related to *their
own experts* that Defendants can access on their own. In other words, Defendants' requests
are not for materials such as covert recordings that only Ansur possesses or has
knowledge of. In fact, Defendants' motion does not even argue that they are unable to
access the requested materials through other avenues, such as by obtaining them from
their own experts (and the Court would have serious doubts about any claim that
Defendants cannot access the requested materials given that those materials involve or
come from Defendants' very own experts).[3] Moreover, unlike in *Deese* and *Newsome*, here

---

[3] Both the nature of Defendants' production requests and the contents of their motion to compel reveal that
Defendants have sought production of these materials so they may better anticipate what arguments and
documents Ansur will rely upon when attempting to impeach Defendants' experts (*see* Doc. 160). In other
words, Defendants aren't making these requests because they can't access this information in other ways.

it is readily apparent that the requested materials serve no substantive purpose and are only going to be used for impeachment purposes. Put simply, the Court believes materials containing Defendants' expert's prior statements and reports could only have one use at trial – to impeach the testimony of those experts. Thus, this case is readily distinguishable from *Deese* and *Newsome* because both of those cases involved materials that: (1) were in the sole possession of one party; and (2) appeared to serve a substantive purpose. *See generally Deese*, 183 F.R.D. 534; *Newsome*, 437 F.Supp.2d 431. As such, these cases do not support Defendants' arguments.

Having determined that no precedent clearly requires (or prevents) the production of impeachment materials responsive to production requests 10 and 15, the Court analyzes Defendants' requests under the familiar framework of Rule 26(b). Significantly, even if the requested materials were being used for both substantive and impeachment purposes, Defendants have failed to explain why such a request should be granted under Rule 26(b). *See, e.g.*, *Wilson v. Wexford Health Sources, Inc.*, No. 18-CV-498-RJD, 2021 WL 2291115, at *2 (S.D. Ill. June 4, 2021) (Analyzing several of the factors listed in Rule 26(b)(1) and holding that the "discovery sought by Plaintiff is not proportional to the needs of this case."); *U.S. Sec. & Exch. Comm'n v. SBB Rsch. Grp., LLC*, No. 19 C 6473, 2023 WL 4205532, at *10 (N.D. Ill. June 27, 2023) (analyzing each factor listed in Rule 26(b)(1) to determine whether the defendants' motion to compel should be granted). As discussed above, Defendants have not argued that they do not already possess or cannot obtain the

---

Rather, they are making these requests so they can have an advantage in fronting or countering Ansur's potential impeachment efforts.

requested materials on their own. Again, the requested materials are materials "regarding *Defendants' experts'* prior work or publications," (Doc. 160 at p. 3), not materials related to Ansur's experts which could conceivably be more difficult for Defendants to obtain on their own. As such, the "benefit" of Defendants' request is negligible at best. On the other hand, Ansur cannot yet know which materials it will use to impeach Defendants' experts because that will depend on their testimony and the evidence presented. Therefore, to avoid being limited in what it may use to impeach Defendants' experts, Ansur would have to produce every material it may conceivably use in order to comply with production requests 10 and 15. This is a substantial burden, which undoubtedly outweighs any potential benefit.[4] In addition, Defendants presumably have better or at least equal access to the requested information, which also cuts against requiring production under both Rule 26(b)(1), which looks at the parties' "relative access," and Rule 26(b)(2)(C), which looks at whether the requested discovery is "unreasonably cumulative or duplicative" or can be obtained from a different, more convenient source.[5]

---

[4] In this regard, the Court wishes to clarify that it does not believe that learning how one's opponent may seek to impeach one's own experts should be treated as a "benefit" under Rule 26(b). Rather, using discovery for this purpose appears to be an improper attempt to impair the impeachment value of the requested materials. *See generally Denty v. CSX Transp., Inc.*, 168 F.R.D. 549, 550 (E.D.N.C. 1996) ("The obvious rationale for excluding impeachment materials from discovery is that their disclosure would substantially impair their impeachment value.").

[5] Defendants state that "publicly available information is subject to these discovery rules" and cite *Martino v. Kiewit New Mexico Corp.*, 600 F. App'x 908, 911 (5th Cir. 2015), for support (Doc. 160 at pp. 4-5). However, in addition to being nonprecedential, the court's holding in that case was not so broad. Rather, the court held that a publicly available document still needs to be disclosed under Rule 26(a)(1)(A). *Martino*, 600 F. App'x at 911. In contrast, when looking at production requests under Rule 26(b), a court in this circuit has stated, "It also appears to the Court that some information about the business practices of other companies including their fees would be publicly available *which means there likely is a less burdensome way for DoorDash to obtain at least some of the information it is seeking* within the meaning of Federal Rule of Civil Procedure

Similarly, until Defendants' experts introduce evidence or offer testimony that Ansur will try to impeach, materials involving Defendants' experts' prior work or publications are not relevant. *See Denty*, 168 F.R.D. at 550. Notably, *Denty* addressed a similar issue and concluded that "Federal Rule of Civil Procedure 26(b)(1) requires discoverable material to be relevant to the subject matter involved. Impeachment materials are only relevant to the extent plaintiff puts forth substantive evidence susceptible to impeachment. At this time any surveillance material [is] not relevant." *Id.* As applied to the facts of this case, this factor also weighs against requiring production of the requested impeachment materials because the requested materials are not currently relevant and there is only a *potential* for them to be relevant in the future.

And that use of "potential" brings the Court to one final issue with Defendants' motion; that Ansur cannot possibly know exactly how it will impeach Defendants' experts until there is testimony and evidence to be impeached. The Court does not believe it fair to require Ansur to gaze into a crystal ball prior to trial to determine exactly what materials it will use for impeachment purposes. To craft such a rule would unfairly limit Ansur to whatever it predicts it will use to impeach, at the detriment of any helpful impeachment evidence that is not predicted and produced beforehand.[6] While this *could*

---

26(b)(2)(C)." *City of Chicago v. DoorDash, Inc.*, No. 1:21-CV-05162, 2023 WL 5431401, at *16 (N.D. Ill. Aug. 23, 2023) (emphasis added); *see also In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:14-CV-6016-RLY-TAB, 2017 WL 4099209, at *4 (S.D. Ind. Sept. 15, 2017) ("Given that the public information is equally accessible to both parties, Plaintiff need not foot the expense (and effort) of providing to the Cook Defendants what they can find in an internet search.").

[6] If parties were required to predict and share all potential impeachment evidence prior to trial whenever a formal discovery request is made for those materials, the Court imagines every party in every civil case would make such a request because it would provide the benefits of: (1) limiting what evidence an opposing party may use for impeachment purposes, and (2) helping prepare for impeachment attempts in order to minimize their effectiveness.

potentially be solved by Ansur simply producing anything and everything it may possibly use for impeachment purposes, there are still no guarantees that Ansur would be able to cover everything beforehand. Moreover, the imposition of such a large burden on Ansur would clearly outweigh any benefit to Defendants.[7]

For all these reasons, the Court DENIES Defendants' Motion to Compel. However, the Court offers a word of caution to Ansur in light of this ruling: "[i]f the impeachment evidence has a substantive purpose, a party cannot hide the ball in discovery, then produce on the day of trial. A party's proper designation of impeachment evidence is critical and must be prudently exercised." *Newsome*, 437 F. Supp. 2d at 438. In other words, while the Court finds Ansur is not required to produce the requested materials because they are being used solely for the purpose of impeachment and Defendants' discovery request is unduly burdensome, Ansur may not later attempt to reverse course and introduce any of the withheld materials for any reason other than that of impeachment.

---

[7] Ansur has also argued that Defendants production requests implicate privilege concerns related to the work product doctrine (*see* Doc. 182 at pp. 6-7). However, because the Court has determined that Defendants' request should be denied for the reasons discussed above, the Court has not reached this issue.

<u>C</u><small>ONCLUSION</small>

For the reasons delineated above, Defendants' motion to compel is **DENIED** (Doc. 160).

**IT IS SO ORDERED.**

**DATED:  June 4, 2024**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**