IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANSUR AMERICA INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 21-cv-59-SMY |
| vs. | ) ) |
| JAMES A. BORLAND and QUINN, JOHNSTON, HENDERSON & PRETORIOUS, CHTD., | ) ) ) ) ) |
| Defendants. | ) ) ) ) |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Ansur America Insurance Company ("Ansur") filed this lawsuit alleging legal malpractice related to a product liability case filed in St. Clair County, Illinois. Ansur alleges that Defendants failed to properly manage the defense of the underlying case, resulting in Ansur being forced to settle for an unsupported and unprecedented amount. The following motions are now before the Court:

- Defendants' Motion to Exclude Expert Testimony of Falak Shah, Ph.D. (Doc. 140), which Ansur opposes (Doc. 146); and,

- Defendants' Motion to Exclude Portions of the Testimony of Plaintiff's Expert, Sari S. Montgomery (Doc. 144); which Ansur opposes (Doc. 149).

**Discussion**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702.

1

District courts have a "gatekeeping" obligation to ensure that expert testimony is both relevant and reliable. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (2003). In that vein, the Court considers: (1) whether the expert qualified; (2) whether the expert's methodology reliable; and (3) whether the expert's testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). The party offering the expert testimony bears the burden of proof as to relevance and reliability. *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) (citing *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009)).

The specific factors identified in *Daubert* do not necessarily or exclusively apply to all experts in all cases. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The inquiry is flexible and focuses on the principles and methodology of the expert opinions, not the conclusions that are generated. *Daubert*, 509 U.S. at 580. Moreover, "a *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."" *Id.* (quoting *Daubert*, 509 U.S. at 596).

**Defendants' Motion to Exclude Expert Testimony of Falak Shah, Ph.D. (Doc. 140)**

Ansur disclosed Dr. Falak Shah, Ph.D., a licensed professional engineer as an expert. Defendants argue that Dr. Shah's opinions are irrelevant and unreliable in that he provides only an outline of untested hypotheses in his June 14, 2023 report, such that his analysis is incomplete and

cannot be analyzed through any relevant means. They further argue that Dr. Shah provides fails to eliminate possible causes related to the failure of the shower stool.

In the operative Complaint, Ansur alleges that Defendants failed to properly manage the defense of the underlying case in various ways, including their failure to retain an engineering expert to investigate and determine the cause of the allegedly defective shower stool's failure, and as a result, a manufacturing defect was conceded. Ansur anticipates that Defendants will claim an engineering expert was not necessary to determine the cause of the stool's failure.

Dr. Shah's report and opinions are based on his visual inspection of the shower stool in April 2023, and a review of documents provided. The parties had agreed in advance of Dr. Shah's inspection that the stool could be photographed, videoed, examined, and measured. Whether any additional testing would take place was left to be determined (Doc. 146-3, p. 37).

In his report, Dr. Shah opines that a visual examination alone did not provide him with sufficient information to determine the mechanical cause or causes for the stool's failure to a reasonable degree of engineering certainty (Doc. 141-1, p. 4). He further opines that there are three categories under which the mechanical cause or causes could fall, but additional analyses beyond merely visual inspection would be required to assess each of those. *Id.*

While Dr. Shah does not identify the mechanical cause for the stool's failure, the Court finds that his opinions and conclusion that a visual inspection alone could not determine the mechanical cause or causes of the stool's failure are directly relevant to the issue of whether the applicable standard of care required Defendants to retain an engineering expert to conduct the analyses necessary to make the determination.

Defendants' argument that Dr. Shah's opinions are unreliable because they do not address each of the *Daubert* factors fails as well. Here, Dr. Shah's methodology and analysis were

appropriate given the issues and under the circumstances presented. He performed a visual inspection as agreed before opining that he could not determine the cause the stool's failure solely based on that type of inspection, which is an issue presented in this case.

Defendants may certainly attempt to discredit Dr. Shah's opinions and lack of additional testing on cross-examination or in their own presentation of evidence. However, their arguments implicate the weight to be given to Dr. Shah's testimony, not to its admissibility. *See Daubert*, 509 U.S. at 596. Therefore, Defendants' Motion is **DENIED**.

### Defendants' Motion to Exclude Portions of the Testimony of Plaintiff's Expert, Sari S. Montgomery (Doc. 144)

Ansur also disclosed Sari Montgomery as a retained expert regarding Defendants alleged violations of Illinois ethical rules and the standard of care. Defendants move to bar certain of Montgomery's opinions regarding the standard of care, arguing that she has no qualifications to give those opinions, and the opinions are contrary to the law. Specifically, Defendants seek to exclude Montgomery's opinions that Defendants violated the standard of care by:

(1) Failing to issue a litigation hold letter at the beginning of the litigation;

(2) Failing to conduct jury verdict research;

(3) Failing to timely advise Ansur and Signature of conflicts of interest over the law barring insurance for punitive damages; and,

(4) Failing to inform Ansur and Signature that there could be a $10 million punitive damage award in addition to a $1.35 million award in compensatory damages, one month before the trial, when prior liability estimates had exposure not exceeding $325,000.

With respect to her qualifications, Montgomery received her B.A. at the University of Chicago and her J.D. at Loyola University Chicago. Since her graduation in 1994, she has worked as Litigation Counsel for the Illinois Attorney Registration and Disciplinary Commission ("ARDC") and was ultimately promoted to Senior Litigation Counsel. In those roles, she performed hundreds of

investigations and prosecuted over 50 disciplinary cases before the ARDC's Hearing Board. She also trained ARDC counsel and staff.

Since 2010, Montgomery has been employed at Robinson, Steward, Montgomery & Doppke LLC, where she has represented attorneys in disciplinary investigations, hearings, and appeals before the ARDC and the Illinois Supreme Court, represented judges before the Illinois Judicial Inquiry Board and bar applicants in character and fitness matters. She has provided ethics advice and opinion letters to law firms, attorneys, government agencies and law-related businesses, and has served as an expert witness in legal malpractice and fee litigation. She has served as an adjunct professor teaching legal ethics and professional responsibility, has served on numerous committees and boards, and has authored numerous publications.

Defendants first argue that Montgomery is not qualified to render opinions in this case regarding the standard of care because she lacks the experience to qualify her as an expert product liability litigation attorney. They also point out that Montgomery has never represented a product manufacturer nor handled a case involving a personal injury or consumer products, has never represented a client who has been alleged to be liable for punitive damages apart from sanctions, and has not handled a case in St. Clair County, Illinois.

As a licensed attorney who had represented attorneys in disciplinary investigations, hearings and appeals, both for the ARDC and in private practice, Montgomery has the requisite background and experience to render opinions regarding the standard of care Defendants owed to Plaintiff based on the applicable ethical requirements and rules of professional responsibility. *See generally Hermansen v. Riebandt*, 2020 IL App (1st) 191735 (Nov. 25, 2020) (plaintiff's expert in a legal malpractice action was Mary Robinson who was a former administrator of the ARDC and her current practice in private practice involved representing attorneys in ARDC proceedings and providing consultation services for legal ethics issues). Experience specifically related to product liability actions is not required. The motion is **DENIED** to the extent Montgomery will not be barred based on her qualifications.

Next, Defendants argue that Montgomery's opinions regarding Defendants' requirement to give coverage advice to Ansur and the insured company in the underlying case violate the Rules of Professional Conduct and a ISBA ethics opinion on this issue. They contend that if Defendants had disclosed a conflict of interest between Ansur and Signature, that Ansur would have been handed a significant coverage defense, thereby harming Signature greatly and violating Rules of Professional Conduct 1.6(b)(7). And they argue that an attorney retained by an insurance company to defend its insured owes a duty to the insured not to disclose facts to the insurer which might prejudice the insured's rights in a potential coverage dispute with the insurer, as set forth in ISBA Advisory Opinion, July 17, 1992 (Doc. 144-3)). The Court disagrees.

In the instant case, Ansur alleges that at no time after the filing of the motion seeking punitive damages in the underlying case, did Defendants advise Ansur or Signature that there was a potential conflict of interest between them because punitive damages would not be covered under Signature's policy. Relatedly, Montgomery opines, "Defendants' failure to comply with the standard of care by failing to fully disclose its conflict in concurrently representing Ansur and Signature once the punitive damages claims had been filed, and/or to withdraw from representing both Ansur and Signature absent informed consent to the conflict, violated Rule 1.7 of the Illinois Rules of Professional Conduct and Defendants' fiduciary duties to both Ansur and Signature." (Doc. 144-1 at p. 9).

Both Rule 1.6(b)(7) and Rule 1.7(a) address concurrent conflicts of interest and attorneys' duties to disclose information and resolve such conflicts of interest. Montgomery's report sets forth her opinions regarding Defendants' ethical duties and that a breach occurred when Defendants did not disclose the existence of a resulting conflict of interest between Ansur (the insurer) and Signature (the insured) on the issue of punitive damages. These opinions are reliable, and are directly relevant to Ansur's claims and the issues raised in this case.

Defendants also argue that Montgomery's opinions regarding a conflict of interest on coverage and punitive damages conflict with an ISBA Advisory Opinion and are therefore impermissible. But an ISBA opinion is not binding on this Court. *See generally Bay Grp. Health Care, LLC v. Ginsberg Jacobs, LLC*, No. 15 C 0986, 2017 WL 770984, at *5 (N.D. Ill. Feb. 28, 2017). The ISBA opinion itself states, "While the Opinions express the ISBA interpretation of the Illinois Rules of Professional Conduct and other relevant materials in response to a specific hypothesized fact situation, they do not have the weight of law…"See ISBA Advisory Opinion on Professional Conduct, Opinion No. 92-2, July 17, 1992 (Doc. 144-3). Accordingly, the Opinion does not provide a basis to exclude an otherwise relevant and reliable expert opinion. The motion is **DENIED** on this point.

Defendants go on to argue then that Montgomery's opinions regarding Defendants' communications to Ansur about the liability and damages exposure in the underlying case should be barred because she doesn't have education, training, or experience in evaluating a product liability case. Specifically, they assert that her opinions that Defendants violated Rule 8.4(c) and were dishonest and deceitful are "off base" because she has never handled a product liability case and would not know whether rapid changes in the case as it approaches trial requires different additional reporting.

As previously noted, specific experience with respect to product liability litigation is not required in this case. Montgomery has the requisite background and experience to render opinions regarding the standard of care Defendants were required to meet based on the applicable ethical requirements and rules of professional responsibility. *See generally Hermansen v. Riebandt*, 2020 IL App (1st) 191735 (Nov. 25, 2020). Illinois Rules of Professional Conduct 1.4 and 8.4 form the bases for her opinion that Defendants failure to communicate with Ansur about its exposure violated the required standard of care. Defendants may disagree with and cross examine Montgomery on these points, but her opinions will not be barred on that basis. The motion is **DENIED** on this point.

Finally, Defendants argue that Montgomery's opinion regarding Defendants' failure to conduct appropriate jury verdict research should be barred because she lacks experience in product liability

defense, cannot opine how a product liability defense lawyer determines exposure, has never done product liability defense jury verdict research, and did not conduct her own jury verdict research before rendering her opinion.  On this point, the Court agrees.  Montgomery fails to provide a basis for this particular opinion, and her background and experience alone does not suffice.  Therefore, Defendants' motion is **GRANTED** on this point.

## Conclusion

For the foregoing reasons, Defendants' Motion to Exclude Expert Testimony of Falak Shah, Ph.D. (Doc. 140) is **DENIED**, and Motion to Exclude Portions of the Testimony of Plaintiff's Expert, Sari S. Montgomery (Doc. 144) is **GRANTED in part and DENIED in part**.

**IT IS SO ORDERED.**

**DATED:  September 30, 2024**

*[signature]*

**STACI M. YANDLE**
**United States District Judge**