IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANSUR AMERICA INSURANCE COMPANY, a Michigan Corporation,<br><br>    Plaintiff,<br>vs.<br><br>JAMES A. BORLAND and QUINN, JOHNSTON, HENDERSON & PRETORIOUS CHTD., an Illinois corporation,<br><br>    Defendants. | Case No. 21-cv-00059-SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 142). Plaintiff Ansur America Insurance Company responded in opposition (Doc. 168). For the following reasons, the motion is **DENIED**.

### BACKGROUND

In this case, Plaintiff Ansur America Insurance Company claims Defendants committed legal malpractice in defending a product liability lawsuit in St. Clair County, Illinois by failing to adequately investigate the claim, failing to assert necessary third-party claims, failing to conduct necessary discovery, failing to retain necessary experts, and failing to disclose a conflict of interest between Ansur (the insurer) and Signature Hardware (the insured). The Court granted Defendants' motion for partial summary judgment, finding that as a matter of law, Ansur is not entitled to recover as damages the amount its reinsurers paid to settle the underlying case (Doc. 88).

The case is set to proceed to trial on Ansur's legal malpractice claims and its claims for its direct damages. Defendants now move for summary judgment, arguing that Ansur's expert failed

1

to opine that Defendants' actions were the proximate cause of Ansur's alleged injuries.

## FACTS[1]

The following relevant facts are undisputed unless otherwise noted: Plaintiff Ansur America Insurance Company provided insurance coverage to Clawfoot Supply, LLC (d/b/a Signature Hardware) ("Signature") (Doc. 1 at ¶1).  Ansur retained Defendants James A. Borland and Quinn, Johnston, Henderson & Pretorous CHTD to defend Signature in a products liability action filed in St. Clair County, Illinois ("the underlying case"). The plaintiff in the underlying case alleged that on May 31, 2016, she fell from a defective shower stool that she had purchased from Signature and sustained injuries.  (*Id.* at ¶13).

In depositions conducted in the underlying case, Signature employees admitted that they received prior notice of failed shower stools, that they recognized the stools could pose a safety risk to customers, and that they recognized that someone could get hurt.  (*Id.* at ¶¶36-37).  Based upon this testimony, the plaintiff amended her Complaint to allege that Signature was strictly liable for her injuries because it knew the shower stool was in a dangerous condition when it left Signature's possession.  (*Id.* at ¶41).  The plaintiff then moved for summary judgment on the grounds that Signature had actual knowledge of the defect.  (*Id.* at ¶51).  The trial court entered partial summary judgment in favor of the plaintiff.  (*Id.* at ¶56).

The plaintiff in the underlying case then filed a Second Amended Complaint, adding a claim for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and a loss of consortium claim.  (*Id.* at ¶¶57-59).  She also sought leave to seek punitive damages on the basis that the shower stool failure was the fourth failure in fewer than four months, and Signature had knowledge of the previous three.  (*Id.* at ¶62).  The trial court granted the plaintiff's request for

---

[1] This summary of facts is taken from Defendant's statement of "Undisputed Material Facts" (Doc. 143) and Plaintiff's Statement of Material Facts (Doc. 168-1).

leave to seek punitive damages. (*Id.* at ¶65). The claims against Signature were ultimately settled for payment of the policy limits. (Id. at ¶¶120, 121).

Ansur subsequently filed this action alleging legal malpractice and negligent misrepresentation (Doc. 1). Specifically, Ansur alleges that Borland failed to conduct a reasonable investigation, failed to raise defenses, failed to obtain experts, failed to advise Ansur or Signature of any potential conflict of interest once punitive damages were pleaded, and failed to communicate critical developments to Ansur.

Ansur disclosed Dr. Sari S. Montgomery as a retained expert witness with respect to the standard of care (Doc. 168-2 at pp. 306-307). In part, Dr. Montgomery opines that "to a reasonable degree of professional certainty, James Borland and Quinn, Johnston, Henderson & Pretorious Chtd. (collectively "Defendants") had an attorney-client relationship with both the insurer, Ansur, and the insured, Signature, and that Defendants did not fulfill their ethical responsibility to either." (Doc. 143-1 at p. 5):

> Defendants did not exercise a reasonable degree of care and skill regarding their representation and their compliance with the Illinois Rules of Professional Conduct. In failing to exercise reasonable care and skill, Defendants breached their fiduciary duties required of Illinois attorneys by placing the interests of one client above another client, failing to recognize that their conduct in this regard created an potentially impermissible conflict of interest, failing to recognize that Defendant Borland's own conduct in the underlying litigation placed him in a conflicted position and made him a potential witness in that litigation, failed to provide competent and diligent representation or adequately communicate with their clients, and failed to meet the standard of care recognized concerning the matters set forth below…

*Id.* at pp. 5-11.

## **DISCUSSION**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears

the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the non-moving party must identify specific facts in the record showing that genuine issues of material fact exist precluding summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the court "…must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen v. Finantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

In Illinois, to prevail on a legal malpractice claim, a plaintiff must prove: (1) the defendant attorney owed the plaintiff client a duty of due care arising from an attorney-client relationship, (2) the attorney breached that duty, (3) the client suffered an injury in the form of actual damages, and (4) the actual damages resulted as a proximate cause of the breach. *Bourke v. Conger*, 639 F.3d 344, 347 (7th Cir. 2011) *citing Fox v. Seiden*, 382 Ill. App. 3d 288 (1st Dist. 2008). A plaintiff must generally present expert testimony to establish the standard of care against which the attorney's conduct must be measured, and failure to present such expert testimony is typically fatal to a legal malpractice claim. *Barth v. Reagan*, 139 Ill.2d 399, 407 (1990). If negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306-307 (2005).

Illinois courts have long ago held that proximate causation in a legal malpractice case is generally a factual issue to be decided by the trier of fact because it is often debatable and fair-minded people might reach different outcomes. *First Nat'l Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 202 (1st Dist. 2007). Such a determination is to be made by the trier of fact after

consideration of all the evidence and the attending circumstances. *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 753 (2d Dist. 2008); *see also Gelsomino v. Gorov*, 149 Ill. App. 3d 809, 815 (1st Dist. 1986) (plaintiffs presented numerous examples of evidence that could have been presented at trial such that the proffered testimony by plaintiffs indicate an issue of fact as to proximate cause remains); *see also Renshaw v. Black*, 299 Ill. App. 3d 412, 418 (5th Dist. 1998) (attorney's own admissions and testimony in deposition may fall short of establishing liability in a summary judgment context but certainly create a factual issue to be decided by the ultimate trier of fact). Expert testimony is only one type of evidence that a plaintiff can rely on to establish the causation element of a legal malpractice claim. *Bourke v. Conger*, 639 F.3d 344, 347 (7th Cir. 2011).

Here, Defendants assert that Ansur's expert, Dr. Montgomery, failed to testify or provide opinions regarding whether Defendants were the proximate cause of Plaintiff's alleged damages, and that such an expert opinion is necessary for Ansur to prevail on its legal malpractice claims. Citing authority applicable to medical malpractice cases in Illinois, requiring expert testimony to prove proximate cause, Defendants seek to have this Court create such a requirement applicable to legal malpractice cases; the Court declines the invitation.

While expert testimony is necessary in legal malpractice cases to establish the standard of care and an attorney's breach, As the Seventh Circuit has noted, no such requirement exists to establish the proximate cause. *Bourke*, 639 F.3d at 347. Expert testimony is only one type of evidence that a plaintiff can rely on regarding the causation element. *Id.*

Defendants argue that pursuant to *Barth*, the rules of evidence that govern medical malpractice cases apply to legal malpractice cases. More specifically, they assert that since medical malpractice cases require expert testimony to establish to a reasonable degree of medical certainty that a defendant's breach of the applicable standard of care is more probably than not the

5

cause of plaintiff's injury, the same is required in legal malpractice claims. But *Barth* does not stand for that proposition at all. That case involved a plaintiff's failure to present expert testimony establishing a lawyer's deviation from the applicable standard of care and failure to timely disclose the identity of any such expert. *Id.* at 399-421.

Here, Dr. Montgomery details in her report how in her opinion, Defendants' alleged breaches of the standard of care harmed Ansur:

> Defendants' failure to timely depose the Miles plaintiffs' experts "resulted in Ansur and Signature's inability to develop evidence in response to Plaintiff's experts because disclosure and deposition deadlines had either passed or were too close to provide a meaningful opportunity to engage defense experts to refute Plaintiff's experts' conclusions" (Doc. 143-1 at 6); "filing an Answer to Plaintiff's original Complaint denying knowledge of the alleged defect of the product when his client's own representatives testified to such knowledge, subject[ed] Ansur" to the threat of sanctions (*id.* at 7); and once such sanctions were threatened, Defendants failed "to timely and adequately communicate with Ansur" regarding case developments and their legal significance, including Defendants' conflict of interest and a massive increase in estimated liability—waiting to disclose such information "until one month before trial, after discovery had closed and it was too late to remediate" (*id.* at 10); SOF ¶ 69.
>
> Defendants "misled Ansur and Signature into believing that Defendants were appropriately defending the underlying matter" by failing to timely advise their clients of the truthful impact that having no experts of their own would have on the case; Defendants' failure to disclose their conflict "misled both parties as to Signature's right to control their own defense and hire independent counsel at Ansur's expense"; and Defendants "misled Ansur and Signature as to their expected exposure until it was too late to take remedial action" by consistently reporting a case value no greater than $325,000 until approximately a month before trial, when they suddenly reported that Signature "likely faced [ ] in punitive damages and [ ] in compensatory damages." (Doc. 143-1 at 10); SOF ¶¶ 70–72.

Ansur has also presented evidence and testimony to support a finding that "but for" Defendant's failure to timely disclose the claim for punitive damages, Ansur could have issued a reservation of rights letter to its insured and potentially avoided the payment of a significant settlement (including punitive damages) and avoided any bad faith claims by its insured. As such, a factual issue exists regarding the "but for" of Defendants' alleged negligence that must be determined by the trier of

6

fact.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docs. 142) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  September 30, 2024**

**STACI M. YANDLE**
**United States District Judge**